*UNITED STATES DISTRICT COURT*
*DISTRICT OF MAINE*

| | |
|---|---|
| *DENISE E. DEROSIER,* | ) |
| *Plaintiff* | ) ) ) |
| v. | ) *Civil No. 08-274-B-W* |
| | ) |
| *MICHAEL J. ASTRUE,* | ) |
| *Commissioner of Social Security,* | ) ) |
| *Defendant* | ) |

*REPORT AND RECOMMENDED DECISION*[1]

Following an additional hearing that was mandated by the Appeals Council, the plaintiff in this Social Security Disability ("SSD") appeals from a portion of the commissioner's decision, contending that the administrative law judge erred by failing to consider lay evidence of the onset of her claimed impairments, failing to call a medical advisor to testify with respect to the date of onset, and failing to comply with certain aspects of the Appeals Council's order of remand.  I recommend that the commissioner's decision be affirmed.

After an initial unfavorable decision on her application, Record at 52-61, the plaintiff appealed successfully to the Appeals Council, which issued an order remanding the case to the administrative law judge, *id*. at 45-48.  After a second hearing, in accordance with the commissioner's sequential evaluation process, 20 C.F.R. § 404.1520; *Goodermote v. Secretary*

---

[1] This action is properly brought under 42 U.S.C. § 405(g).  The commissioner has admitted that the plaintiff has exhausted her administrative remedies.  The case is presented as a request for judicial review by this court pursuant to Local Rule 16.3(a)(2)(A), which requires the plaintiff to file an itemized statement of the specific errors upon which she seeks reversal of the commissioner's decision and to complete and file a fact sheet available at the Clerk's Office.  Oral argument was held before me on March 20, 2009, pursuant to Local Rule 16.2(a)(2)(C) requiring the parties to set forth at oral argument their respective positions with citations to relevant statutes, regulations, case authority, and page references to the administrative record.

1

*of Health & Human Servs.*, 690 F.2d 5, 6 (1st Cir. 1982), the same administrative law judge found, in relevant part, that the plaintiff met the disability insured status requirements of the Social Security Act only through the close of 1998, Finding 1, Record at 40; that, in the relevant period, between May 25, 1995 and the close of 1998, the plaintiff suffered from the impairment of obesity, an impairment that was severe but which did not meet or equal the specific criteria of any impairment listed in Appendix 1 to Subpart P, 20 C.F.R. Part 404 (the "Listings"), Findings 4 & 6, *id.*; that, during the relevant period, the plaintiff retained the residual functional capacity to perform a full or wide range of work at the sedentary exertional level, Finding 7, *id.*; that, to the extent she maintained that she was more functionally limited than this during the relevant period, the plaintiff's allegations were not fully credible, Finding 8, *id.*; that, during the relevant period, the plaintiff could not return to her past relevant work, Finding 9, *id.*; that, given her age (32 years old on the alleged date of onset), education (two years of business college), and residual functional capacity, application of Rule 201.27 of Appendix 2 to Subpart P, 20 C.F.R. Part 404 (the "Grid") directs a finding that during the relevant period there existed in significant numbers in the national economy other unskilled, sedentary jobs that the plaintiff was capable of performing, Findings 10-12, *id.* at 41; and, that the plaintiff therefore was not under a disability, as that term is defined in the Social Security Act, between May 25, 1995 and the close of 1998, Finding 13, *id.* The Appeals Council declined to review this decision, *id.* at 5-7, making it the final determination of the commissioner, 20 C.F.R. § 404.981; *Dupuis v. Secretary of Health & Human Servs.*, 869 F.2d 622, 623 (1st Cir. 1989).

The standard of review of the commissioner's decision is whether the determination made is supported by substantial evidence. 42 U.S.C. § 405(g); *Manso-Pizarro v. Secretary of Health & Human Servs.*, 76 F.3d 15, 16 (1st Cir. 1996). In other words, the determination must

be supported by such relevant evidence as a reasonable mind might accept as adequate to support the conclusion drawn. *Richardson v. Perales,* 402 U.S. 389, 401 (1971); *Rodriguez v. Secretary of Health & Human Servs.*, 647 F.2d 218, 222 (1st Cir. 1981).

The administrative law judge reached Step 5 of the sequential process, at which stage the burden of proof shifts to the commissioner to show that a claimant can perform work other than her past relevant work. 20 C.F.R. § 404.1520(f); *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Goodermote*, 690 F.2d at 7. The record must contain positive evidence in support of the commissioner's findings regarding the plaintiff's residual functional capacity to perform such other work. *Rosado v. Secretary of Health & Human Servs.*, 807 F.2d 292, 294 (1st Cir. 1986).

## Discussion

### A.  Date of Onset

As the plaintiff points out, *see* Plaintiff's Itemized Statement of Errors ("Itemized Statement") (Docket No. 9) at 14, Social Security Ruling 83-20 ("SSR 83-20") sets forth the commissioner's policy on establishment of the onset date of disability, *see* SSR 83-20, reprinted in *West's Social Security Reporting Service* Rulings 1983-1991, at 49 ("In addition to determining that an individual is disabled, the decisionmaker must also establish the onset date of disability. In many claims, the onset date is critical; it may affect the period for which the individual can be paid and may even be determinative of whether the individual is entitled to or eligible for any benefits.").

> The ruling provides, in relevant part:
>
> In some cases, it may be possible, based on the medical evidence to reasonably infer that the onset of a disabling impairment(s) occurred some time prior to the date of the first recorded medical examination, e.g., the date the claimant stopped working. How long the disease may be determined to have existed at a disabling level of severity depends on an informed judgment of the facts in the particular case. This judgment, however, must have a legitimate medical basis. At the

>   hearing, the administrative law judge (ALJ) should call on the services of a medical advisor when onset must be inferred. If there is information in the file indicating that additional medical evidence concerning onset is available, such evidence should be secured before inferences are made.

*Id.* at 51.

The plaintiff, arguing that the administrative law judge should have found that she had unspecified severe mental impairments during the relevant period, first contends that the administrative law judge wrongly required contemporaneous medical evidence of the date of onset. Itemized Statement at 13-15. She asserts that he could have relied on the statements of the plaintiff's family members and was, at a minimum, required to discuss them. *Id.* at 14. Specifically, she points to the following evidence:

>   Both Mrs. Desrosier's sister and mother attested to Mrs. Derosier's deteriorated condition after the birth of her son to the point that as a dishwasher, she "had to take breaks all the time, and she had great difficulty standing for more than a few minutes at a time;" she could not "manage her life" or take care of her son the way she wanted to; that due to depression, "she was so sad and tearful so much of the time;" she could not stand for more than a few minutes at a time; she "needed to lean against something or hold onto something if she was standing up trying to do anything;" "[s]he would stay in the house most of the time and didn't have much contact with anyone but her son and her husband;" and "she would break down and cry all the time over things that may not have seemed big to most people." (Tr. 184, 185).

*Id.* at 15. Several of these examples do not appear to pertain to a mental disability at all, but the plaintiff apparently intends them as such. The plaintiff's final argument on this point is that "[t]he ALJ erred in not properly considering this evidence in evaluating the severity of Mrs. Derosier's mental impairments." *Id.*

At oral argument, counsel for the plaintiff stated that the mental impairment at issue is depression, a fact not apparent from the plaintiff's itemized statement. The plaintiff's counsel argued that this is so because the commissioner, in dealing with a subsequent application by the

4

plaintiff for Supplemental Security Income ("SSI"), found depression to be a severe impairment and awarded those benefits on that basis. I found no evidence of such an award in the record,[2] but counsel for the commissioner agreed at oral argument that SSI benefits had been awarded to the plaintiff for depression in connection with a separate application. Neither side provided the court with the effective date of that award.

The administrative law judge noted that the plaintiff "complains of a personality disorder, an anxiety disorder and severe depression." Record at 18. At oral argument, counsel for the plaintiff contended that the administrative law judge would or should know to which of these alleged impairments the symptoms recited by the plaintiff's sister and mother apply because the plaintiff's depression had been found by the commissioner to be severe at a later date. The transcript of the plaintiff's second hearing does include statements by the plaintiff's current counsel that she was seeking SSD benefits based, at least in part, on a claim that depression was a severe impairment before her date last insured. *Id*. at 376.

In support of her contention that the administrative law judge should have found her depression to have been severe before December 31, 1998, the plaintiff quotes a section of SSR 83-20 which says, "If reasonable inferences about the progression of the impairment cannot be made on the basis of the evidence in [the] file and additional relevant medical evidence is not available, it may be necessary to explore other sources of documentation[.]" Itemized Statement at 14. For purposes of the plaintiff's argument, however, the salient point in the foregoing sentence is not the exploration of other sources. Rather, it is the condition that *additional* relevant medical evidence not be available. Preceding the language from SSR 83-20 quoted by

---

[2] Indeed, the letter from plaintiff's current counsel to the Appeals Council seeking review of the decision at issue here states that "Ms. Derosier filed a subsequent claim for SSI benefits under Title XVI. Claimant was found disabled, due to severe obesity and impairment of her right wrist, as of the filing date of the subsequent SSI claim." Record at 367. There is no mention of depression in the letter. Similarly, the commissioner's record shows an award for arthritis and obesity, despite the inclusion of depression in the application for SSI benefits. *Id*. at 176-77.

the plaintiff is the following statement: "This judgment [about how long the impairment has existed at a disabling level of severity], however, must have a legitimate medical basis." SSR 83-20 at 51. Thus, while contemporaneous medical evidence may not be required, some medical evidence of the existence of a particular impairment certainly is.

As a starting point, some medical evidence of the existence of a specific mental impairment must be available, even if that evidence addresses a period after the date last insured. *Id*. at 50 ("Medical reports containing descriptions of examinations or treatment of the individual are basic to the determination of the onset of disability. The medical evidences serves as the primary element in the onset determination."). It is only then that lay evidence regarding the date of onset may be considered.

> In this case, the administrative law judge observed:
>
> > The claimant's mental impairments. The claimant very clearly has severe mental impairments at this time. Two princip[al] issues raised by her case are (1) whether she suffered from a severe mental impairment or combination of impairments prior to the date she last met the disability insured status requirements of the Social Security Act, and (2) whether mental incapacity prevented her from understanding the review process, and therefore *prevented* her from timely requesting an extension of time within which to request reopening, or other review, of the earlier determinations described above.

Record at 21-22 (emphasis in original). The second issue is not pressed by the plaintiff on this appeal.

With respect to the first of these two issues, whether she suffered from a severe mental impairment, after quoting applicable regulations, the administrative law judge went on as follows:

> The claimant has submitted Exhibit 22F, the *August 4, 2006* report from Dr. Rines, a clinical and forensic psychologist. According to Dr. Rines' report, he met with the claimant on two occasions in *May, 2006*, more than seven years after the date she last met the disability insured status

> requirements, at the request of her counsel. . . . He said that . . . he reviewed a set of medical records made available to him by the claimant's counsel ("notes of her primary care provider that spanned the period July 1998 through April 2006[,]" much of which "focused on her weight[,]" but also on her intermittent treatment for depression, her migraine headaches, some metabolic problems associated with her weight . . . and other matters . . .). He said that the clamant told him, among other things, that . . .she did not want to take anti-depressants, although they were frequently prescribed, as she was afraid this would give her husband an excuse in court to gain custody of their son; . . . that by the end of 1998 she was *starting to gain weight* appreciably and experiencing an *increasing depression*; that her weight had been the primary impediment to her return to work . . . .
> \* \* \*
> It was Dr. Rines' diagnostic impression that the claimant suffered from "a major depression (persistent and severe)" . . . . He opined that there were also "clear signs of a passive dependent and avoidant personality adjustment[;]" that she had a personality disorder . . . . He further opined that:
>
>> . . . It would also be my opinion that [her severe depression which, coupled with her morbid obesity, likely precludes her from any substantial gainful activity] *likely* was in full flare in *December of* 1998, when she realized that having a child was not going to resolve her personal and marital difficulties and she *began* to move from a state of obesity towards a morbid state of that. . . . [T]he dynamics of her family life for years have been such that a major depression would have likely developed given her dependence and passivity.
>
> He offered no opinion as to whether the claimant suffered from a personality disorder in December, 1998. He offered no opinion relating [to] the period of time between the alleged date of onset of her disability and December, 1998. He estimated that her current global assessment of functioning was in the low 40s, but said that it had certainly . . . been higher in the past decade.

Record at 26-29 (emphasis in original; footnote omitted).

The administrative law judge went on to describe in extensive detail why he rejected Dr. Rines' retrospective opinion as to the onset of the plaintiff's depression. *Id.* at 29-31. He noted that the medical records showed that the plaintiff "consistently denied any mental problems well beyond 1998, and . . . there was virtually no clinical evidence that she had any as of that date."

7

*Id.* at 31. He then recorded that the plaintiff's "1995 medical records reflect no mental impairments;" that she was taking no medications for a mental condition in July 1998 and denied psychological problems at that time; that she denied depression, anxiety, or any other mental disturbance to a treating source in September 1998; and that in June 1999, she again denied depression, anxiety, or any other mental disturbance to a treating source. *Id.* at 31-32. Her first complaint of depression was made to a treating source in April 2001. *Id.* at 33.

In short, Dr. Rines' 2006 retrospective opinion is the only medical evidence in the record from which an inference concerning the date of onset of the plaintiff's depression could be drawn, and the administrative law judge has provided ample reason, based on the plaintiff's medical records, to reject that conclusion. *See also id.* at 34. This rejection is also supported by the assessments of two state-agency psychologist reviewers, as the administrative law judge noted. *Id.* at 33-34, 222, 244.

Given the absence of medical evidence that would allow the drawing of an inference regarding the date of onset of the plaintiff's depression, the administrative law judge was not required to consider the written statements of the plaintiff's mother and sister. *See Ricci v. Apfel*, 159 F.Supp.2d 12, 18 (E.D. Pa. 2001) (absence or scarcity of medical evidence of disabling condition before date last insured constitutes substantial evidence supporting ALJ's decision).

### B.  Use of Medical Expert

While SSR 83-20 does not mandate in every instance that a medical advisor be called, or additional evidence be sought, courts have construed one or both of those steps to be essential when the record is ambiguous regarding onset date. *See, e.g., Katt v. Astrue*, No. 05-55043, 2007 WL 815418, at *1 (9th Cir. Mar. 14, 2007) ("[A]n ALJ must call a medical expert if there is ambiguity in the record regarding the onset date of a claimant's disability. If the medical

evidence is not definite concerning the onset date and medical inferences need to be made, SSR 83-20 requires the administrative law judge to call upon the services of a medical advisor and to obtain all evidence which is available to make the determination.") (citation and internal quotation marks omitted); *Blea v. Barnhart*, 466 F.3d 903, 910 (10th Cir. 2006) ("[A] medical advisor need be called only if the medical evidence of onset is ambiguous.") (citation and internal quotation marks omitted); *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 353 (7th Cir. 2005) ("The ALJ acknowledged that the medical evidence was inconclusive.  Rather than explore other sources of evidence, as SSR 83-20 requires, the ALJ drew a negative inference at that point."); *May v. Social Sec. Admin. Comm'r*, No. 97-1367, 1997 WL 616196, at *1-*2 (1st Cir. Oct. 7, 1997) (because evidence regarding date on which claimant's mental impairment became severe was ambiguous, SSR 83-20 required administrative law judge to consult medical advisor); *Grebenick v. Chater*, 121 F.3d 1193, 1200-01 (8th Cir. 1997) ("It is important to understand that the issue of whether a medical advisor is required under SSR 83-20 does not turn on whether the ALJ could reasonably have determined that [claimant] was not disabled before [her date last insured].  Rather, when there is no contemporaneous medical documentation, we ask whether the evidence is ambiguous regarding the possibility that the onset of her disability occurred before the expiration of her insured status.  If the medical evidence is ambiguous and a retroactive inference is necessary, SSR 83-20 requires the ALJ to call upon the services of a medical advisor to insure that the determination of onset is based upon a legitimate medical basis.") (citations and internal quotation marks omitted).

It is the medical evidence that must be ambiguous in order to require the services of a medical advisor.  If there is no medical evidence that would allow the drawing of an inference about the date of onset and the severity of a particular impairment before the date last insured,

there is no reason to consult a medical advisor. Nor can a claimant create an ambiguity that requires consultation of a medical advisor merely by offering a retrospective medical opinion that conflicts with all of the contemporaneous medical evidence and the plaintiff's contemporaneous statements to her medical providers. *See Hanks v. Astrue,* 2008 WL 4059877 (D. Colo. Aug. 29, 2008), at *6.

The plaintiff is not entitled to remand on the basis of any failure to comply with SSR 83-20.

### B. Compliance with Appeals Council Remand Order

The plaintiff contends that the administrative law judge failed to follow most of the directives of the Appeals Council on remand. Itemized Statement at 21-24. She points out that the relevant regulation provides that on remand from the Appeals Council, "[t]he administrative law judge shall take any action that is ordered by the Appeals Council and may take any additional action that is not inconsistent with the Appeals Council's remand order." *Id.* at 22, quoting 20 C.F.R. § 404.977(b).

The plaintiff asserts that the administrative law judge failed to comply with the following directives from the Appeals Council:

> In the Appeals Council Remand Order . . . , the Appeals Council stated that the ALJ's 2006 decision "does not contain an adequate evaluation of the treating and examining source opinions in Exhibit 7F, 18F, 20F and 21F." (Tr. 45). These exhibits refer to the reports of Brian Rines, Ph.D., Penny DeRaps, Ph.D, FAANP, and David W. Booth, Ph.D. (Tr. 194-197, 344-347, 352-353, 354-363). Thus, the Appeals Council instructed the ALJ to "[g]ive further consideration to the treating and examining source opinions." (Tr. 46) In addition, the Appeals Council directed that, as appropriate, the ALJ "may request the treating and examining sources to provide additional evidence and/or further clarification of the opinions and medical source statement about what the claimant could still do despite the impairments through December 31, 1998." (Tr. 47). The Appeals Council also noted that in assessing Mrs. Derosier's residual functional capacity, the ALJ failed to provide a

10

> "function-by-function assessment of the claimant's ability to do work-related physical and mental activities and sufficient rationale with specific references to the evidence of record in support of the assessed limitations" and directed the ALJ to properly assess her RFC. (TR. 46, 47). Additionally, the ALJ failed to consider all of the regulatory factors in addressing Mrs. Derosier's credibility as the only factor addressed "is the objective evidence" and directed that the ALJ reevaluate her subjective complaints on remand. (Tr. 46-47). The ALJ committed reversible error in failing to comply with these directives.

*Id.* at 21-22.

### *1. Opinions of Dr. DeRaps*

The plaintiff's first specific argument is an assertion that "the ALJ failed to address the reports and opinions of Dr. DeRaps and Dr. Booth as required." *Id.* at 23. However, she never mentions Dr. Booth's reports and opinions again. This passing, conclusory reference is not enough to raise an issue for the court's consideration, and I accordingly will not address Dr. Booth's reports or opinions further.

With respect to Dr. DeRaps, the plaintiff contends that, because she had treated the plaintiff "'for at least ten years,' which would predate the date last insured," the administrative law judge should have contacted her "for clarification of her views regarding the severity of claimant's impairments and limitations prior to December 31, 1998." *Id*. But the Appeals Council did not direct the administrative law judge to contact Dr. DeRaps. It merely said that he "may request" a treating source like Dr. DeRaps "to provide additional evidence and/or further clarification" about what the plaintiff could do before December 31, 1998. Record at 47. That said, the administrative law judge's opinion does not mention Dr. DeRaps at all. He only cites to the records of her treatment of the plaintiff (Exhibit 13F), Record at 31-33, to support his conclusion that the plaintiff's depression was not severe before the date last insured.

11

An administrative law judge is required to take any action that is ordered by the Appeals Council. 20 C.F.R § 404.977(b); *Tauber v. Barnhart*, 438 F.Supp.2d 1366, 1376 (N.D.Ga. 2006). The administrative law judge's citation to entries in an exhibit to which he was not directed by the Appeals Council (Dr. DeRaps' medical records, Exhibit 13F) does not serve to comply with an order to consider exhibits to which he *was* directed (Dr. DeRaps' physical and mental residual functional capacity assessments, Exhibits 18F and 20F). However, this error is harmless. *Oliver v. Astrue*, 2008 WL 2778229 (D. Me. June 30, 2008), at *9; *Rogers v. Astrue*, 2008 WL 850131 (E.D. Cal. 2008), at *15-*16.

Dr. DeRaps was apparently treating the plaintiff both for mental and physical ailments. *E.g.*, Record at 249-51. Yet her doctorate is a Ph.D., *id.* at 246, and she is a family nurse practitioner, *id.* The record does not reveal the nature of Dr. DeRaps' Ph.D. It is not clear that she is a licensed or certified psychologist, the only type of Ph.D. that would make her an acceptable medical source and thus permit the administrative law judge to use her reports or opinions as a basis for establishing the existence of a medically-determinable impairment. 20 C.F.R. § 404.1513(a). Even if she were an acceptable medical source, however, I have already concluded that there is sufficient evidence in the record to support the administrative law judge's conclusion that the plaintiff did not suffer from a mental impairment before the date last insured.

Similarly, a nurse practitioner is not an acceptable medical source. *Id.* Therefore, the administrative law judge could not have considered her assessment of the plaintiff's physical residual functional capacity, whether in 2006 or before the date last insured, to establish the existence of a severe physical impairment before the date last insured. In sum, any error on the part of the administrative law judge in not explicitly considering Dr. DeRaps' assessments, or in

not contacting her to inquire about the plaintiff's physical or mental impairments before the date last insured, could only be harmless.

## 2. Assessing Residual Functional Capacity

The plaintiff next argues that the administrative law judge failed to comply with the Appeals Council's order of remand when he "summarily concluded that Mrs. Derosier can perform sedentary work without further restriction." Itemized Statement at 23. Specifically, she asserts that the administrative law judge failed to address her wrist impairments, which were found disabling as of October 25, 2006, Record at 176-77, when "at least two of her wrist surgeries occurred before December 31, 1998." *Id*. She refers again to Dr. DeRaps' opinion that in 2006 "she ha[d] significant limitations related to reaching, fingering, and manipulating objects." *Id*. at 24. The issue, however, is not the plaintiff's physical residual functional capacity in 2006, but rather before the date last insured. For the reasons already discussed, Dr. DeRaps' opinion, even in the unlikely event that it could be used to infer the existence of similarly severe limitations in 1998, may not be used to establish the existence of a physical impairment at any time.

The fact that two wrist surgeries were performed before the date last insured, standing alone, does not allow, much less require, the inference that the plaintiff had a severe impairment of the wrist before the date last insured. The two pages of the record cited by the plaintiff in support of her argument on this point, pages 338-39, *id*., merely record that wrist surgery took place in 1985, 1990, and 2003. Record at 338. They do not suggest any limitations on work-related activities as a result of the surgeries. Nor does the fact that benefits were awarded in 2006, due in part to four surgeries on the right wrist followed by an inability to flex it more than 45 degrees, *id*. at 176, necessarily mean that the plaintiff was so limited seven years earlier.

Assuming *arguendo*, as the plaintiff contends, Itemized Statement at 23, that the administrative law judge "summarily concluded" that the plaintiff could perform sedentary work before the date last insured "without further restriction," and thereby violated the Appeals Council's directive to "[g]ive further consideration to the claimant's maximum residual functional capacity and provide appropriate rationale," Record at 47, that error thus is also harmless.

### *3. Credibility*

The plaintiff's final argument, *in toto*, is the following:

> Finally, the ALJ made the same error in the 2007 decision as he did in his 2006 decision: he only addressed objective evidence in evaluating Mrs. Derosier's credibility. (Tr. 37-39, 46). The ALJ's failure to follow the remand order is another basis to remand this case.

Itemized Statement at 24. The pages of the record cited in this paragraph contain the administrative law judge's discussion of the plaintiff's credibility and the standards for evaluating credibility, Record at 37-39, and the Appeals Council's observation that the earlier opinion of the administrative law judge did not consider a list of factors in evaluating the plaintiff's subjective complaints, *id*. at 46. Nowhere does the plaintiff suggest what evidence in the record is relevant to the plaintiff's credibility, nor what evidence could lead to a different ultimate conclusion about that issue. The conclusory presentation of this issue does not suggest why or how the administrative law judge's current treatment of this issue "fail[s] to follow the remand order." Counsel for the plaintiff said nothing about this issue at oral argument.

On the showing made, the plaintiff takes nothing from this argument.

**Conclusion**

For the foregoing reasons, I recommend that the commissioner's decision be **AFFIRMED**.

*NOTICE*

*A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which de novo review by the district court is sought, together with a supporting memorandum, within ten (10) days after being served with a copy thereof. A responsive memorandum shall be filed within ten (10) days after the filing of the objection.*

*Failure to file a timely objection shall constitute a waiver of the right to de novo review by the district court and to appeal the district court's order.*

Dated this 7th day of April, 2009.

/s/ John H. Rich III
John H. Rich III
United States Magistrate Judge